## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**ANGELA CRAIN**                                                         **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO.3:18CV787 CWR-LRA**

**ANDREW SAUL,[1]**
**COMMISSIONER OF SOCIAL SECURITY**                          **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff appeals the final decision denying her application for social security income ("SSI").  The Commissioner requests an order pursuant to 42 U.S.C. §405(g), affirming the final decision of the Administrative Law Judge.  Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this cause be affirmed.

On October 2, 2015, Plaintiff filed an application for SSI alleging disability beginning that same date due to "bipolar disorder (manic depression), radial nerve palsy and asthma."[2]  She was 42 years old on her alleged onset date, with a 10th grade education and past relevant work experience as a solderer.  Following agency denials of her application, an Administrative Law Judge (ALJ) rendered an unfavorable decision finding that she had not established a disability within the meaning of the Social Security

---

[1] Andrew Saul was named the new Commissioner of Social Security on June 17, 2019, and should be substituted for his predecessor, Nancy Berryhill. Fed. R. Civ. P. 25(d).

[2] ECF No. 11, p. 130.

Act.  The Appeals Council denied Plaintiff's request for review.  She now appeals that decision.

At step one of the five-step sequential evaluation,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date.  At steps two and three, the ALJ found that although Plaintiff's bipolar disorder (with anxiety and depression) and chronic obstructive pulmonary disorder (COPD) were severe, they did not meet or medically equal any listing.  At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light unskilled work:

> except the claimant can only occasionally climb ramps and stairs. Due to her COPD, the claimant can have no more than occasional exposure to pulmonary irritants, such as dusts, odors, and fumes, as well as extreme heat or cold. The claimant is limited to performing simple, routine, repetitive tasks, but not at a production pace (such as assembly line work). The claimant is limited to making simple, work-related decisions. The claimant can occasionally interact with supervisors and coworkers, but must work alone, not in a team, and she cannot interact with the general public.·[4]

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform past relevant work as a solderer, or alternatively, other work as a cleaner.

---

[3] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[4] ECF No. 11, p. 18.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff alleges that there are several errors warranting the reversal or remand of this case. As her first two points of error, she claims that the ALJ erred in failing to find her shoulder bursitis and personality disorder with histrionic and passive-aggressive features were severe at step two, which, in turn, resulted in the ALJ's failure to incorporate all her impairments into the residual functional capacity determination at step four. As her second two points of error, Plaintiff alleges the ALJ failed to properly weigh the medical opinion evidence and evaluate her credibility. The undersigned addresses each of these in turn.

Plaintiff's first point of error—that the ALJ applied too high a threshold in his step two determination—is unavailing. Citing both the regulatory and *Stone* standards for evaluating severity, the ALJ concluded that Plaintiff's COPD and bipolar disorder (with anxiety and depression) were her only severe impairments. 20 C.F.R. § 404.1520; *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). That he failed to find her shoulder bursitis and personality disorder met the threshold severity finding at step two does not warrant reversal or remand, as this case did not turn on a finding at step two, but on a finding that Plaintiff retained the residual functional capacity to perform work. *Salmond v. Berryhill*, 892 F.3d 812 (5th Cir. 2018); *Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012); *Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015); *Herrera v. Comm'r of Soc. Sec.,* 406 F. App'x 899, 903 (5th Cir. 2010). Plaintiff fails to establish that the wrong standard was applied, and as set forth herein, any error was harmless.

In his evaluation of the severity of Plaintiff's impairments at step two, the ALJ noted that Plaintiff was diagnosed[5] with shoulder bursitis prior to the application date and had not sought treatment since—neither of which is disputed by Plaintiff on appeal. While hardly dispositive, a claimant's failure to seek treatment is a relevant factor in determining the severity of an alleged impairment, and it may be used in conjunction with the claimant's daily activities and medical reports to discount complaints of

---

[5] After noting that Plaintiff's shoulder bursitis was a pre-application diagnosis, the ALJ commented that the diagnosis was made by psychological consulting examiner, Dr. Boggs. ECF No. 11, p. 16. However, Dr. Boggs appears to have been merely referencing the diagnoses in the medical records received upon referral. *Id*. at 295.

disabling pain or other limitations.  *Doss v. Barnhart,* 137 F. App'x 689, 690 (5th Cir. 2005); *Anthony,* 954 F.2d at 295; *Griego v. Sullivan,* 940 F.2d 942, 945 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990).  On appeal, Plaintiff posits that the ALJ's failure to find her shoulder bursitis severe at step two was prejudicial because he failed to incorporate into his residual functional capacity assessment the overhead reaching limitation assigned by state agency reviewer, Dr. Hulett.  The ALJ explained that he found no basis for a corresponding limitation in the absence of treatment and credited Dr. Hulett's opinion only to the extent that it was consistent with light exertional work. *Villa*, 895 F.2d at 1024.  Plaintiff cites no aspects of her bursitis diagnosis that cast doubt on her capacity to perform this kind of work.  No examining or treating physician had assigned a reaching limitation; rather, medical records show that Plaintiff was only instructed to "refrain from lifting heavy objects."[6]

As for the severity of her mental impairments, Plaintiff's argument is two-fold: the ALJ (1) failed to recognize all of her mental impairments in step two of the sequential analysis; and, (2) failed to account for all the limitations caused by the mental

---

[6] ECF No. 11, p. 232.  The Commissioner also suggests that prejudice is not established because neither of the jobs identified by the ALJ at step five include an overhead reaching limitation. Plaintiff counters that the ALJ should have asked the vocational expert to consider an overhead reaching limitation in order to properly evaluate Plaintiff's residual functional capacity. However, there is no requirement to present limitations not borne out by the record.  An ALJ's residual functional capacity assessment and corresponding hypothetical need only incorporate the limitations recognized by the ALJ.  *Bowling*, 36 F.3d at 436.  Plaintiff does not cite, nor does the Court find, objective findings or subjective complaints of a reaching limitation in the record.

impairments which were deemed severe into his residual functional capacity assessment at step four.

Regarding the first, Plaintiff contends that the ALJ failed to recognize that her personality disorder constituted a severe impairment at step two.  She notes that the diagnosis was made by both, Dr. Boggs, the consulting examining psychologist, and Dr. Prosser, the state agency psychological consultant who conducted a psychiatric review and mental residual functional capacity assessment.[7]  It is notable that in both her SSI application and examination with Dr. Boggs, Plaintiff alleged disability due to bipolar disorder, depression, and anxiety.  The ALJ clearly credited these allegations, along with the medical evidence, in finding Plaintiff's bipolar disorder (with anxiety and depression) was a severe mental impairment at step-two.  The record is replete, in fact, with evidence from Plaintiff's primary care providers diagnosing and treating her for bipolar disorder, anxiety and depression.  And although, as state agency and psychological consultants, Drs. Boggs and Prosser are experts in both mental health and disability evaluations, 20 C.F.R. § 404.1527(f)(2)(i), Plaintiff has not shown that the failure to assess the severity of her personality disorder at step two is a basis for remand.  *Herrera*, 406 F. App'x at 903.

As with her bursitis argument, for instance, Plaintiff asserts that she was prejudiced because the ALJ did not incorporate any corresponding limitations into the residual functional capacity determination.  However, a "diagnosis is not, itself, a

---

[7] It is not entirely clear whether Dr. Prosser was simply summarizing Dr. Boggs's findings or making an independent personality-disorder diagnosis. ECF No. 11, pp. 61-67.

functional limitation." *Dise*, 630 F. App'x at 326.  The ALJ's residual functional capacity assessment limits Plaintiff to working alone and undertaking no more than simple, routine repetitive tasks or simple work-related decisions.  Plaintiff does not specify what personality-disorder work-related limitation is unaccounted for.  Nor does she identify any additional limitations that Drs. Boggs or Prosser assigned arising therefrom.  Absent such a showing, she fails to show that she was prejudiced.

Plaintiff's second argument—that the ALJ's residual functional capacity assessment fails to fully account for the limitations arising from the mental impairments which were deemed severe at step two—is equally unavailing.  In evaluating Plaintiff's mental impairments, the ALJ considered the four broad functional areas for assessing the severity of mental disorders in "paragraph B:" understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and, adapting or managing oneself. [8]  Based on the evidence, the ALJ concluded that Plaintiff had no more than moderate limitations in each area.

---

[8] In 2017, "paragraph B" was amended to require an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentration, persistence, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt.  404, Subpt P, App 1, Listing 12.00(A)(2)(b).  Although Plaintiff's application was filed prior to the amendment, the ALJ issued his decision in January 2018 and applied the "paragraph B" criteria, as amended, to her disability claim. *See, e.g.,* 81 Fed. Reg. 66138-01, fn.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

Plaintiff does not dispute the ALJ's conclusions in this regard but submits that the ALJ's residual functional capacity assessment fails to adequately capture them; specifically, her moderate limitations in adapting or managing herself, which "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E(4).[9]  In support, she quotes excerpts from Dr. Boggs's report suggesting that her current mental condition presents difficulty sustaining routine tasks and relating to others.  But Dr. Boggs's opinion, in its entirety, reads as follows:

> The claimant says that she has not worked or sought employment in six years. Her mental health treatment history goes back to adolescence but she is not getting any help of this type now. She is taking a benzodiazepine. She denies substance abuse but I was concerned that a chemical could have been contributing to her agitation today. She was unkempt and had a musty odor. She is a heavy smoker. She was almost tremulous at times. There was some irritability and underlying anger. ***In this condition***, she would have difficulty sustaining routine tasks and relating to others, but she has a boyfriend who helps her at home.  She is separated from her children and I was unable to get the full story on this.
>
> The claimant handles her money but says she depends on her boyfriend for other things. Her adaptation is likely to continue about the same during the coming year.[10]

---

[9] The listings provide the following examples to illustrate the nature of this area of mental functioning:

> Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E.

[10] ECF No. 11, p. 296 (emphasis added).

8

It is unclear the degree to which Dr. Boggs is attributing Plaintiff's mental limitations to substance use; outlining his diagnoses and observations; opining on her work-related limitations, or all of the above.[11] The ALJ assigned the opinion little weight, finding it "vague and non-specific, as he simply referred to the claimant experiencing difficulty sustaining [routine] tasks but not an inability to do so."[12]

ALJs are entitled to determine the credibility of medical experts and weigh their opinions accordingly. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). It is their responsibility to interpret "the medical evidence to determine [a claimant's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Based on the evidence here, the ALJ found that Plaintiff's mental residual functional capacity limited her to: performing simple, routine, repetitive non-assembly tasks; making simple, work-related decisions; occasional interaction with supervisors and coworkers, and no interaction with the general public. She must also work alone, not in a team. Plaintiff fails to explain precisely why these limitations fail to adequately account for her moderate limitations in adapting and managing herself. As she herself concedes, the limitations in the 'paragraph

---

[11] *See Winston v. Berryhill*, 755 F. App'x. 395, 402 (5th Cir. 2018) ("Upon reviewing Dr. Davis's medical evaluation, this court concurs with the Commissioner. Dr. Davis's evaluation makes "judgments about the nature and severity" of Winston's "symptoms, diagnosis and prognosis," but it does not opine on "what [Winston] can still do despite [her] impairment(s), and [her] physical or mental restrictions." *Cf.* 20 C.F.R. § 404.1527(a)(2). Rather, the evaluation simply outlines Dr. Davis's diagnoses and observations, leaving other personnel to draw conclusions about the implications for Winston's RFC.").

[12] ECF No. 11, p. 19.

B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 4 and 5 of the sequential evaluation. In determining her residual functional capacity, the ALJ considered the state agency reports in conjunction with medical records indicating that Plaintiff's mental "condition was aggravated by stressful situations, such as a loved one's passing," but "adequately controlled with medication" and rarely adjusted.[13]

Given the evidence before him, any error by the ALJ in failing to find Plaintiff's shoulder bursitis and personality disorder severe at step two was harmless. Substantial evidence supports the ALJ's residual functional capacity determination at step four, and Plaintiff fails to establish that either impairment impacts her ability to perform work-related activities beyond the limitations indicated in the ALJ's residual functional capacity determination.

Plaintiff's third assignment of error is that the ALJ failed to properly weigh the opinions of state agency physicians, Boggs, Prosser, and Hulett. The law is well-settled that an ALJ is entitled to rely on expert opinions of a claimant's ability to perform various tasks, but an ALJ is not bound by them, so long as he explains the weight assigned. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Beck v. Barnhart*, 205 F. App'x. 207, 213–14 (5th Cir. 2006). "[C]ursory, boilerplate language about carefully considering the entire record" will not suffice. *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017). But that is not what occurred here.

---

[13] *Id*. at 19-20.

The ALJ credited Dr. Hulett's opinion to the extent that it limited Plaintiff to light work, but found no support for a reaching limitation given that Plaintiff had not sought treatment for her shoulder bursitis since applying for SSI. *Doss*, 137 F. App'x 689. The ALJ also properly discounted as vague and non-specific, Dr. Boggs's opinion that Plaintiff would have difficulty sustaining routine tasks because it was based on a one-time examination. Plaintiff's longitudinal treatment record supported the residual functional capacity assigned. Citing the medical reports from her primary care physicians, the ALJ observed that Plaintiff's anxiety was "routinely treated with medication, which rarely had to be adjusted" and "appeared well-controlled, outside of aggravating factors such as death in the family." The ALJ also gave supported reasons for according limited weight to Dr. Prosser's opinion that Plaintiff could understand, remember, and carry out short and simple instructions. The ALJ observed that the opinion was based on the available evidence at the time of her review and discounted it in favor of "more recent evidence in the claimant's testimony warrant[ing] additional limitations." Thus, while Dr. Prosser may have identified personality disorder among Plaintiff's severe impairments, the limitations she ultimately assigned were not as limiting as those assigned by the ALJ.[14]

In the end, Plaintiff's "argument comes down to the weight the ALJ places on [these reports]—and it is the ALJ's task, not ours, to weigh evidence." *Garcia v. Colvin*, 622 F. App'x. 405, 408-409 (5th Cir. 2015) (unpublished). An ALJ "may place less

---

[14] ECF No. 11, pp. 19-20.

weight, little weight, or even no weight on a report if it includes statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.* (internal quotation marks and citations omitted). The undersigned finds no merit to this assignment of error.

As her final point of error, Plaintiff claims that the ALJ's use of boilerplate language in his credibility assessment warrants reversal or remand. A review of the ALJ's decision as a whole belies this assertion. An ALJ is not required to follow formalistic rules when articulating the reasons for his credibility determination. *Falco v. Shalala,* 27 F.3d 160, 164 (5th Cir. 1994). He need only give due consideration to Plaintiff's subjective complaints—and he did. *Garcia,* 622 F. App'x. at 409. The ALJ explained that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with medical records showing her physical and mental impairments were adequately controlled with medication. He noted that for two years, her COPD was managed with medication and an inhaler, with her last visit in May 2015, while her mental impairments were "well controlled, outside of aggravating factors," with medication and no reports of anxiety or depression as recently as April 2017. In addition, he assigned only partial weight to Dr. Prosser's opinion because "more recent evidence ***in the claimant's testimony*** warrant[ed] additional limitations." And, while he considered the third-party function reports submitted by her father and boyfriend describing Plaintiff's limitations, he explained that neither report, "even taken at face value, would warrant a finding of disability." Despite her limitations, Plaintiff attends to her personal care, manages her finances, and performs various household

12

activities. These determinations and findings are supported by substantial evidence in the record, and the ALJ's opinion was sufficiently specific to make clear how he reached his decision.[15]

## Conclusion

In sum, based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability.  The undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

---

[15] ECF No. 11. pp. 19-20 (emphasis added).

13

the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective

December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415,

1428-29 (5th Cir. 1996).

SO ORDERED on February 5, 2020.


_____
s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE